## UNITED STATES BANKRUPTCY COURT
## IN THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION - FLINT

IN RE:

GENEVIEVE ALEXANDER,            Case No. 11-33228
d/b/a Old Time Acres,               Chapter 12 Proceeding
                                                 Hon. Daniel S. Opperman
                 Debtor.

_____

## CHAPTER 12 PLAN

[ X ]ORIGINAL or [ ] AMENDMENT NO. 2 [ ] PRE CONFIRMATION [ ]POSTCONFIRMATION

      NOW COMES the Debtor Genevieve Alexander, by and through her attorney, LAMBERT, LESER, ISACKSON, COOK & GIUNTA, P.C., and for its Chapter 12 Plan, pursuant to 11 U.S.C. 1221 of the U.S. Bankruptcy Code, set forth the following:

## ARTICLE I
## DEFINITIONS

Debtors in Possession: Genevieve Alexander

Chapter 12: Chapter 12 of the U.S. Bankruptcy Code, 11 U.S.C. 1201 et seq.

Reorganization: The case for reorganization of the Debtor commenced by a voluntary petition under Chapter 12 of the Bankruptcy Code.

Plan: This Plan of Reorganization.

Confirmation of Plan: The entry by this Court of an Order Confirming Plan in accordance with Chapter 12.

Effective Date: Thirty days after the date on which the Order Confirming Plan becomes final and non-appealable.

Court: The United States Bankruptcy Court for the Eastern District of Michigan, which has jurisdiction in this case.

Bankruptcy Code: 11 U.S.C. 101, et seq.

Priority Claim: Claim of general creditor that is entitled to priority in payment under Section 507 of the Bankruptcy Code, including, but not limited to, professional fees as defined herein.

Professional Fees: Any fee and/or costs allowed by the Court as an expense of administration under Section 503(d) of the Code, payable to any person appointed by this Court.

Term of the Plan: 60 months from the date of the first payment hereunder.

Allowed Claim: A claim which has been timely filed on or before the claims deadline with the Bankruptcy Court and to which no objection to the allowance thereof has been filed or as to which an objection has been determined by an order or judgment that is no longer subject to appeal.

Claim:
    (a) A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, which such right arose or accrued prior to the confirmation date; or,

    (b) A right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, natured, unmatured, disputed, undisputed, where such right arose or accrued prior to the confirmation date; or

    (c) A claim arising under Section 502(g) of the Bankruptcy Code.

Contingent Claim: Any claim arising prior to the bankruptcy being filed or during the course of the Chapter 12, as to which the amount of said claim is unknown and/or has not been determined by the Court.

Disputed Claim: All claims of unsecured creditors unless verified by a timely Proof of Claim duly filed with the Clerk of the Court.

Trade Creditor: A creditor of the Debtors, holding a general unsecured claim which claim arose from the creditor advancing funds for the operation of the Debtor's business, pre-petition.

Deficiency Claim: An unsecured claim against the Debtors which amounts to the difference between the value of the secured creditor's collateral, as determined by the Court or per agreement of the parties, and the amount of the secured creditor's total claim as filed and allowed by the Court.

## ARTICLE II - SUBMISSION OF EARNINGS

The Debtor will submit future earnings and income after deduction of business expenses and payments outside the Plan, on an annual basis, to the supervision and control of the Trustee, in accordance with the terms of this Plan, but no sooner than 30 days after the confirmation of the Plan.

## ARTICLE III - EXECUTORY CONTRACTS

The Debtor assumes all executory contracts, unless said contracts have been specifically rejected as part of this Plan. Debtor specifically assumes and reaffirms all government program contracts.

{00116655}    2

11-33228-dof    Doc 13    Filed 09/30/11    Entered 09/30/11 14:05:30    Page 2 of 18

## ARTICLE IV - EXECUTION AND IMPLEMENTATION OF PLAN

Genevieve Alexander, shall be responsible for the continuation of the Debtor's business of boarding, training horses and allowing use of the riding facilities as well as maintaining the pastures and any hay crop the Debtor may plant in the future. The Debtor agrees to submit all earnings and income as in according with the terms of this Plan to the supervision and control of the Trustee, after deduction for business expenses and payments outside the Plan. Payments will be made on an annual basis as stated in the Plan hereafter.

## ARTICLE V - CLAIMS

The holder of any actual or potential claim that has had actual or constructive notice of these Chapter 12 proceedings and has timely filed a claim with the Clerk of the Court.

In the event that the Court nonetheless allows an untimely filed or objected to claim, that claim shall be treated as a part of the class to which it would ordinarily belong.

## ARTICLE VI - MODIFICATION OF PLAN

The Debtor may amend or modify this Plan any time prior to the confirmation without leave of the Court. The Debtor may propose amendments and/or modifications of this Plan at any time subsequent to confirmation with leave of the Court and upon notice to the Creditors. After confirmation of this Plan, the Debtor may without approval of the Court, so long as it does not materially or adversely affect the interests of the creditors, remedy any defect or omission, or reconcile any inconsistencies of the Plan, or in the Order of Confirmation, if any may be necessary to carry out the purposes and effects of this Plan.

## ARTICLE VII - RELEASE OF CROP LIEN

In order to facilitate the continuation of the Debtor's business and to carry out the within Plan of Reorganization, there shall be a release of any and all pre-petition crop liens filed by any creditor whose claim is listed and dealt with in the Plan of Reorganization. The Debtor states that no proceeds of pre-petition crops were used or applied to post petition operating expenses except as allowed by the Court and further that such release shall apply to any and all crops planted after the filing of the petition herein pursuant to section 552(a) of the Bankruptcy Code. Such release of any and all crop liens shall be filed by the creditor in the appropriate county in which such crop lien was previously recorded and at the Michigan Secretary of State. If such release is not filed within 10 days from the confirmation of this Plan, the Debtor may file a certified, true copy of this Plan or the Order of Confirmation in lieu of such release and with the full force and effect such release.

## ARTICLE VIII - JURISDICTION OF THE COURT

The Court will retain jurisdiction until this Plan has been fully consummated for, including, but not limited to, the following purposes:

(1) The classification of the claim of any creditor and the re-examination of claims which have been allowed, and for the determination of such objection as may be filed to the creditor's claim.

(2) To estimate any contingent claims pursuant to Section 502(c)(1) upon request of any holder of a contingent or unliquidated claim, and to make a determination on objections to claims.

(3) Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtors and any other party, including, but not limited to, any right of the Debtor to recover assets, pursuant to the provisions of Title II of the United States Code.

(4) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistencies to this Plan, or the Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan.

(5) The modification of this Plan after confirmation, pursuant to the Bankruptcy Rules and Title II of the United States Code.

(6) To enforce and interpret the terms and conditions of this Plan and if a creditor has refused to accept cure of any default of the Plan to compel such creditor to accept case.

(7) The entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

(8) Entry of an Order concluding and terminating this case.

## ARTICLE IX - MISCELLANEOUS PROVISIONS

If any of the provisions, clauses, or paragraphs of this Plan are determined by the Court to be invalid or insusceptible of confirmation, such invalid or improper language will be deemed severed from the Plan and deleted, so that the remainder of the Plan may be confirmed. Alternatively, if the invalidity of any such provisions precludes confirmation, then the Debtors will be allowed the right to modify this Plan and have it confirmed, as modified.

The Debtor may obtain post confirmation loans to fund post petition operations and to fund this Plan or pay off any Class without further order of the Court.

The Debtor reserves and retains the right to initiate and bring any and all causes of action under 11 USC §544, 545, 546, 547, 548, 549, 550, any and all state and/or federal causes of action as well as defenses or affirmative defenses resulting from the conduct or actions of any creditor.

Only claims that have actually been filed and were ultimately allowed by the Court shall be paid under the terms and condition of this Plan. In the event a creditor filed a claim and a subsequent cause of action was brought against such creditor, even though such claim may be allowed herein, to the extent the Debtor is successful in such cause of action or defense the Plan shall be modified according with respect to such claim.

Upon confirmation of the Plan, all property of the Estate shall revest in the Debtor, except for future earnings of the Debtor proposed to be contributed by the Debtor to the Plan, and other property specifically devoted to the Plan.

## ARTICLE X - TRUSTEE PAYMENT

The Chapter 12 Trustee, Thomas McDonald, who will be administering this Plan, shall receive such percentage of all plan payments as the U.S. Trustee deems appropriate as received from the Debtor pursuant to this Plan. Such fee shall be for the Trustee's office overhead and the Trustee fee and shall be received at least annually by the Trustee and may be deducted from the distributions to the creditors provided herein.

## ARTICLE XI - CROP INSURANCE

The Debtor may maintain crop insurance on any cash crops it plants to the extent available and in the amounts Debtor believes are in its best interest.

## ARTICLE XII - ASSETS

Real Property:

The Debtor owns approximately 32 acres located at 6030 Hunters Creek Road, Imlay City, Michigan. The 32 acres has constructed upon it a barn and a riding stable, the Debtor's residence and two lots for trailers. There are approximately 20 acres that are utilized for pasture or may be utilized for crops and/or hay. The Debtor has owned the property since 1962. The Debtor estimates the fair market value of the property is approximately $400,000. According to the Proof of Claim filed by the secured creditor, the secured creditor asserts a claim of $391,569.46. The Debtor believes this claim is incorrect and should be no greater than approximately $286,273.63 as of December 31, 2010. (See Exhibit "A").

Personal Property:

| | |
|---|---|
| Farm Equipment | $ 9,500.00 |
| Vehicles | $ 6,500.00 |
| Tack, saddles, harness, etc | $ 3,700.00 |
| Cash | $ 500.00 |
| Other Personal Property | $ 15,000.00 |
| **Total:** | **$ 35,200.00** |

## ARTICLE XIII – LIABILITIES

| | |
|---|---|
| Administrative Claims | $ 5,000.00 |
| Secured Claims | |
| | $ 391,569.46* |
| Lapeer County Treasurer | $ 0.00 |

*Amount listed on Proof of Claim, the Debtor disputes this balance

| | |
|---|---|
| Total Secured Claims: | $ 391,569.46 |
| Total Priority Claims | $ 95.55 |
| Total Unsecured Claims Timely filed | $ 88.80 |

## ARTICLE XIV – LIQUIDATION ANALYSIS

Assets:

| | |
|---|---|
| Real Property | $400,000.00 |
| Personal Property | $ 35,200.00 |
| **Total Assets:** | **$435,200.00** |

Liabilities:

| | |
|---|---|
| Administrative Claims | $ 5,000.00 |
| Priority Claims | $ 895.55 |
| Secured Claims | $391,569.46 |
| Unsecured Claims as Filed | $ 88.80 |
| **Total Liabilities:** | **$397,553.81** |

### LIQUIDATION ANALYSIS

| Asset | Value | Debt | Exemption | Equity |
|---|---|---|---|---|
| Real Estate | $400,000 | $391,596.46* | $ 21,625 | $ 8,403.54 |
| Farm Equipment | $ 9,500 | $ 0.00 | $ 2,025 | $ 9,500 |
| Vehicles | $ 6,500 | $ 0.00 | $ 3,225 | $ 6,500 |
| Cash | $ 500 | $ 0.00 | $ 500 | $ 500 |
| Tack, Saddles, H , etc | $ 3,700 | $ 0.00 | $ 1,350 | $ 3,700 |
| Other Personal Property | $ 15,000 | $ 0.00 | $ 10,775 | $ 15,000 |
| Social Security Benefits | | $ 0.00 | $ 522(d)(10) | |

*According to proof of claim -----------                                             -----------

# ARTICLE XV - CLASSIFICATION AND TREATMENT OF CLAIMS AND INTEREST

Class No.1: Class 1 consists of attorney fees due and owing plus any additional fees which might result from these proceedings and which fee shall be paid from retainer received prior to filing and income of Debtor. Fees remaining owing shall be paid from the first monies received pursuant to the terms of the Plan of Reorganization.

Class No.2: Class 2 consists of the secured claim of Deutsche Bank National Trust Company as Trustee ("Bank") to the extent said claim is allowed in the alleged amount of $391,569.46. The Debtor shall pay the Bank $2,100 per month for 369 consecutive months with a balloon payment on the 360 month after Confirmation of any remaining amount due and owing. In the event the claim is less than what is asserted by the secured creditor and payments of $2,100 per month pay the claim in full earlier, the Debtor shall only make payments for the period the debt is outstanding. The allowed claim shall be amortized over a period of 30 years and shall accrue interest at the rate of 6% per annum until paid in full. The first payment shall occur on the first day of the first full month following entry of an order confirming Debtor's Plan which is final and non appealable, unless paid in full earlier. The Bank shall retain its lien on real estate, until the allowed claim is paid in full or as otherwise ordered by the Court. In the alternative, the Debtor may obtain financing during the term of this Plan and if successful, will pay off the full balance of the allowed claim upon the closing of such financing, may pay the arrearage or may sell a portion of such collateral and pay the net proceeds to the Bank up to the amount of the allowed claim.

Class No. 3: Class 3 consists of the General Unsecured Claims of the Debtor. The general unsecured claims of the Debtor plus any and all deficiency claims, if any, shall be the excess of the Debtor's net disposable income after payment of Classes 1 through 2 above for a period of five (5) years unless the Debtor's disposable income is sufficient to pay such claims in full prior to the expiration of the five (5) year term of this Plan. To determine the income available to pay to general unsecured claims, such sum shall be calculated by subtracting the Debtor's net income after payment of all operating expenses, the payment of the claims in Classes 1 through 3 above, and a retention by the Debtor of $8,000.00 of its net proceeds for purposes of planting and harvesting and/or maintenance. This payment shall be made to the Trustee on or before December 15th of each year during the term of this Plan, beginning December 15, 2011.

Class No. 4: Class 4 consists of the Debtor, Genevieve Alexander, who shall retain her interest in the Debtor in possession and shall be vested with the property of the estate upon the confirmation of this Plan or Reorganization, free and clear of any interest of any creditor except the secured claims identified in Class 2, Class 3 and Class 4.

Payments to the Trustee. The Debtor shall make the monthly payments to the Trustee on the 15th of each month beginning the first full month after Confirmation and the annual payments required herein to the Trustee on or before December 15 of each year during the term of this Plan. Such payments shall come from Debtor's operating income, crop sales and/or the sale of collateral subject to any of the loans with the consent of the secured party that has a lien on such collateral to the extent the lender has agreed to release such proceeds, if any. Nothing herein shall prohibit the Debtor from selling some or all the collateral securing the indebtedness of a secured creditor, with the applicable secured creditors consent and applying the proceeds from the sale of such collateral to the secured creditor's indebtedness.

LAMBERT, LERER, ISACKSON,
COOK & GIUNTA, P.C.

Dated: September 30, 2011.

By: /s/ Keith A. Schofner
KEITH A. SCHOFNER (P41852)
Attorneys for Debtor
916 Washington Avenue, Suite 309
Bay City, Michigan 48708
Telephone: (989) 893-3518
kschofner@lambertleser.com

IN RE:

GENEVIEVE ALEXANDER,　　　　　　　　　　　Case No. 11-33228
d/b/a Old Time Acres,　　　　　　　　　　　　Chapter 12 Proceeding
　　　　　　　　　　　　　　　　　　　　　Hon. Daniel S. Opperman
　　　　　　　Debtor.
_____

## CHAPTER 12 PLAN

[ X ]ORIGINAL or [ ] AMENDMENT NO. 2 [ ] PRE CONFIRMATION [ ]POSTCONFIRMATION

　　　　NOW COMES the Debtor Genevieve Alexander, by and through her attorney, LAMBERT, LESER, ISACKSON, COOK & GIUNTA, P.C., and for its Chapter 12 Plan, pursuant to 11 U.S.C. 1221 of the U.S. Bankruptcy Code, set forth the following:

## ARTICLE I
## DEFINITIONS

Debtors in Possession: Genevieve Alexander

Chapter 12: Chapter 12 of the U.S. Bankruptcy Code, 11 U.S.C. 1201 et seq.

Reorganization: The case for reorganization of the Debtor commenced by a voluntary petition under Chapter 12 of the Bankruptcy Code.

Plan: This Plan of Reorganization.

Confirmation of Plan: The entry by this Court of an Order Confirming Plan in accordance with Chapter 12.

Effective Date: Thirty days after the date on which the Order Confirming Plan becomes final and non-appealable.

Court: The United States Bankruptcy Court for the Eastern District of Michigan, which has jurisdiction in this case.

Bankruptcy Code: 11 U.S.C. 101, et seq.

Priority Claim: Claim of general creditor that is entitled to priority in payment under Section 507 of the Bankruptcy Code, including, but not limited to, professional fees as defined herein.

Professional Fees: Any fee and/or costs allowed by the Court as an expense of administration under Section 503(d) of the Code, payable to any person appointed by this Court.

{00116655}　　　　　　　　　　　　1

Term of the Plan: 60 months from the date of the first payment hereunder.

Allowed Claim: A claim which has been timely filed on or before the claims deadline with the Bankruptcy Court and to which no objection to the allowance thereof has been filed or as to which an objection has been determined by an order or judgment that is no longer subject to appeal.

Claim:
(a) A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, which such right arose or accrued prior to the confirmation date; or,

(b) A right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, natured, unmatured, disputed, undisputed, where such right arose or accrued prior to the confirmation date; or

(c) A claim arising under Section 502(g) of the Bankruptcy Code.

Contingent Claim: Any claim arising prior to the bankruptcy being filed or during the course of the Chapter 12, as to which the amount of said claim is unknown and/or has not been determined by the Court.

Disputed Claim: All claims of unsecured creditors unless verified by a timely Proof of Claim duly filed with the Clerk of the Court.

Trade Creditor: A creditor of the Debtors, holding a general unsecured claim which claim arose from the creditor advancing funds for the operation of the Debtor's business, pre-petition.

Deficiency Claim: An unsecured claim against the Debtors which amounts to the difference between the value of the secured creditor's collateral, as determined by the Court or per agreement of the parties, and the amount of the secured creditor's total claim as filed and allowed by the Court.

## ARTICLE II - SUBMISSION OF EARNINGS

The Debtor will submit future earnings and income after deduction of business expenses and payments outside the Plan, on an annual basis, to the supervision and control of the Trustee, in accordance with the terms of this Plan, but no sooner than 30 days after the confirmation of the Plan.

## ARTICLE III - EXECUTORY CONTRACTS

The Debtor assumes all executory contracts, unless said contracts have been specifically rejected as part of this Plan. Debtor specifically assumes and reaffirms all government program contracts.

## ARTICLE IV - EXECUTION AND IMPLEMENTATION OF PLAN

Genevieve Alexander, shall be responsible for the continuation of the Debtor's business of boarding, training horses and allowing use of the riding facilities as well as maintaining the pastures and any hay crop the Debtor may plant in the future. The Debtor agrees to submit all earnings and income as in according with the terms of this Plan to the supervision and control of the Trustee, after deduction for business expenses and payments outside the Plan. Payments will be made on an annual basis as stated in the Plan hereafter.

## ARTICLE V - CLAIMS

The holder of any actual or potential claim that has had actual or constructive notice of these Chapter 12 proceedings and has timely filed a claim with the Clerk of the Court.

In the event that the Court nonetheless allows an untimely filed or objected to claim, that claim shall be treated as a part of the class to which it would ordinarily belong.

## ARTICLE VI - MODIFICATION OF PLAN

The Debtor may amend or modify this Plan any time prior to the confirmation without leave of the Court. The Debtor may propose amendments and/or modifications of this Plan at any time subsequent to confirmation with leave of the Court and upon notice to the Creditors. After confirmation of this Plan, the Debtor may without approval of the Court, so long as it does not materially or adversely affect the interests of the creditors, remedy any defect or omission, or reconcile any inconsistencies of the Plan, or in the Order of Confirmation, if any may be necessary to carry out the purposes and effects of this Plan.

## ARTICLE VII - RELEASE OF CROP LIEN

In order to facilitate the continuation of the Debtor's business and to carry out the within Plan of Reorganization, there shall be a release of any and all pre-petition crop liens filed by any creditor whose claim is listed and dealt with in the Plan of Reorganization. The Debtor states that no proceeds of pre-petition crops were used or applied to post petition operating expenses except as allowed by the Court and further that such release shall apply to any and all crops planted after the filing of the petition herein pursuant to section 552(a) of the Bankruptcy Code. Such release of any and all crop liens shall be filed by the creditor in the appropriate county in which such crop lien was previously recorded and at the Michigan Secretary of State. If such release is not filed within 10 days from the confirmation of this Plan, the Debtor may file a certified, true copy of this Plan or the Order of Confirmation in lieu of such release and with the full force and effect such release.

## ARTICLE VIII - JURISDICTION OF THE COURT

The Court will retain jurisdiction until this Plan has been fully consummated for, including, but not limited to, the following purposes:

(1) The classification of the claim of any creditor and the re-examination of claims which have been allowed, and for the determination of such objection as may be filed to the creditor's claim.

(2) To estimate any contingent claims pursuant to Section 502(c)(1) upon request of any holder of a contingent or unliquidated claim, and to make a determination on objections to claims.

(3) Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtors and any other party, including, but not limited to, any right of the Debtor to recover assets, pursuant to the provisions of Title II of the United States Code.

(4) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistencies to this Plan, or the Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan.

(5) The modification of this Plan after confirmation, pursuant to the Bankruptcy Rules and Title II of the United States Code.

(6) To enforce and interpret the terms and conditions of this Plan and if a creditor has refused to accept cure of any default of the Plan to compel such creditor to accept case.

(7) The entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

(8) Entry of an Order concluding and terminating this case.

## ARTICLE IX - MISCELLANEOUS PROVISIONS

If any of the provisions, clauses, or paragraphs of this Plan are determined by the Court to be invalid or insusceptible of confirmation, such invalid or improper language will be deemed severed from the Plan and deleted, so that the remainder of the Plan may be confirmed. Alternatively, if the invalidity of any such provisions precludes confirmation, then the Debtors will be allowed the right to modify this Plan and have it confirmed, as modified.

The Debtor may obtain post confirmation loans to fund post petition operations and to fund this Plan or pay off any Class without further order of the Court.

The Debtor reserves and retains the right to initiate and bring any and all causes of action under 11 USC §544, 545, 546, 547, 548, 549, 550, any and all state and/or federal causes of action as well as defenses or affirmative defenses resulting from the conduct or actions of any creditor.

Only claims that have actually been filed and were ultimately allowed by the Court shall be paid under the terms and condition of this Plan. In the event a creditor filed a claim and a subsequent cause of action was brought against such creditor, even though such claim may be allowed herein, to the extent the Debtor is successful in such cause of action or defense the Plan shall be modified according with respect to such claim.

Upon confirmation of the Plan, all property of the Estate shall revest in the Debtor, except for future earnings of the Debtor proposed to be contributed by the Debtor to the Plan, and other property specifically devoted to the Plan.

## ARTICLE X - TRUSTEE PAYMENT

The Chapter 12 Trustee, Thomas McDonald, who will be administering this Plan, shall receive such percentage of all plan payments as the U.S. Trustee deems appropriate as received from the Debtor pursuant to this Plan. Such fee shall be for the Trustee's office overhead and the Trustee fee and shall be received at least annually by the Trustee and may be deducted from the distributions to the creditors provided herein.

## ARTICLE XI - CROP INSURANCE

The Debtor may maintain crop insurance on any cash crops it plants to the extent available and in the amounts Debtor believes are in its best interest.

## ARTICLE XII - ASSETS

Real Property:

The Debtor owns approximately 32 acres located at 6030 Hunters Creek Road, Imlay City, Michigan. The 32 acres has constructed upon it a barn and a riding stable, the Debtor's residence and two lots for trailers. There are approximately 20 acres that are utilized for pasture or may be utilized for crops and/or hay. The Debtor has owned the property since 1962. The Debtor estimates the fair market value of the property is approximately $400,000. According to the Proof of Claim filed by the secured creditor, the secured creditor asserts a claim of $391,569.46. The Debtor believes this claim is incorrect and should be no greater than approximately $286,273.63 as of December 31, 2010. (See Exhibit "A").

Personal Property:

| | |
|---|---|
| Farm Equipment | $ 9,500.00 |
| Vehicles | $ 6,500.00 |
| Tack, saddles, harness, etc | $ 3,700.00 |
| Cash | $ 500.00 |
| Other Personal Property | $ 15,000.00 |
| **Total:** | **$ 35,200.00** |

{00116655}

5

## ARTICLE XIII – LIABILITIES

| | |
|---|---|
| Administrative Claims | $ 5,000.00 |
| Secured Claims | $ 391,569.46* |
| Lapeer County Treasurer | $ 0.00 |

*Amount listed on Proof of Claim, the Debtor disputes this balance

| | |
|---|---|
| **Total Secured Claims:** | $ 391,569.46 |
| **Total Priority Claims** | $ 95.55 |
| **Total Unsecured Claims Timely filed** | $ 88.80 |

## ARTICLE XIV – LIQUIDATION ANALYSIS

Assets:

| | |
|---|---|
| Real Property | $400,000.00 |
| Personal Property | $ 35,200.00 |
| **Total Assets:** | **$435,200.00** |

Liabilities:

| | |
|---|---|
| Administrative Claims | $ 5,000.00 |
| Priority Claims | $ 895.55 |
| Secured Claims | $391,569.46 |
| Unsecured Claims as Filed | $ 88.80 |
| **Total Liabilities:** | **$397,553.81** |

### LIQUIDATION ANALYSIS

| Asset | Value | Debt | Exemption | Equity |
|---|---|---|---|---|
| Real Estate | $400,000 | $391,596.46* | $ 21,625 | $ 8,403.54 |
| Farm Equipment | $ 9,500 | $ 0.00 | $ 2,025 | $ 9,500 |
| Vehicles | $ 6,500 | $ 0.00 | $ 3,225 | $ 6,500 |
| Cash | $ 500 | $ 0.00 | $ 500 | $ 500 |
| Tack, Saddles, H , etc | $ 3,700 | $ 0.00 | $ 1,350 | $ 3,700 |
| Other Personal Property | $ 15,000 | $ 0.00 | $ 10,775 | $ 15,000 |
| Social Security Benefits | | $ 0.00 | $ 522(d)(10) | |

*According to proof of claim ----------    ----------

# ARTICLE XV - CLASSIFICATION AND TREATMENT OF CLAIMS AND INTEREST

Class No.1: Class 1 consists of attorney fees due and owing plus any additional fees which might result from these proceedings and which fee shall be paid from retainer received prior to filing and income of Debtor. Fees remaining owing shall be paid from the first monies received pursuant to the terms of the Plan of Reorganization.

Class No.2: Class 2 consists of the secured claim of Deutsche Bank National Trust Company as Trustee ("Bank") to the extent said claim is allowed in the alleged amount of $391,569.46. The Debtor shall pay the Bank $2,100 per month for 369 consecutive months with a balloon payment on the 360 month after Confirmation of any remaining amount due and owing. In the event the claim is less than what is asserted by the secured creditor and payments of $2,100 per month pay the claim in full earlier, the Debtor shall only make payments for the period the debt is outstanding. The allowed claim shall be amortized over a period of 30 years and shall accrue interest at the rate of 6% per annum until paid in full. The first payment shall occur on the first day of the first full month following entry of an order confirming Debtor's Plan which is final and non appealable, unless paid in full earlier. The Bank shall retain its lien on real estate, until the allowed claim is paid in full or as otherwise ordered by the Court. In the alternative, the Debtor may obtain financing during the term of this Plan and if successful, will pay off the full balance of the allowed claim upon the closing of such financing, may pay the arrearage or may sell a portion of such collateral and pay the net proceeds to the Bank up to the amount of the allowed claim.

Class No. 3: Class 3 consists of the General Unsecured Claims of the Debtor. The general unsecured claims of the Debtor plus any and all deficiency claims, if any, shall be the excess of the Debtor's net disposable income after payment of Classes 1 through 2 above for a period of five (5) years unless the Debtor's disposable income is sufficient to pay such claims in full prior to the expiration of the five (5) year term of this Plan. To determine the income available to pay to general unsecured claims, such sum shall be calculated by subtracting the Debtor's net income after payment of all operating expenses, the payment of the claims in Classes 1 through 3 above, and a retention by the Debtor of $8,000.00 of its net proceeds for purposes of planting and harvesting and/or maintenance. This payment shall be made to the Trustee on or before December 15th of each year during the term of this Plan, beginning December 15, 2011.

Class No. 4: Class 4 consists of the Debtor, Genevieve Alexander, who shall retain her interest in the Debtor in possession and shall be vested with the property of the estate upon the confirmation of this Plan or Reorganization, free and clear of any interest of any creditor except the secured claims identified in Class 2, Class 3 and Class 4.

Payments to the Trustee. The Debtor shall make the monthly payments to the Trustee on the 15th of each month beginning the first full month after Confirmation and the annual payments required herein to the Trustee on or before December 15 of each year during the term of this Plan. Such payments shall come from Debtor's operating income, crop sales and/or the sale of collateral subject to any of the loans with the consent of the secured party that has a lien on such collateral to the extent the lender has agreed to release such proceeds, if any. Nothing herein shall prohibit the Debtor from selling some or all the collateral securing the indebtedness of a secured creditor, with the applicable secured creditors consent and applying the proceeds from the sale of such collateral to the secured creditor's indebtedness.

LAMBERT, LERER, ISACKSON,
COOK & GIUNTA, P.C.

Dated: September 30, 2011.

By: /s/ Keith A. Schofner
KEITH A. SCHOFNER (P41852)
Attorneys for Debtor
916 Washington Avenue, Suite 309
Bay City, Michigan 48708
Telephone: (989) 893-3518
kschofner@lambertleser.com

# Exhibit "A"



**RETURN SERVICE ONLY**
Please do not mail payments to this address
P.O. Box 619063
Dallas, TX 75261-9063

**IMPORTANT TAX RETURN INFORMATION BELOW**

Customer Care Department 1-877-304-3100
7:00am - 9:00pm CST Monday through Friday
7:00am - 4:00pm CST Saturday

Your tax information is also
available on the web.
Web site: www.ahmsi3.com

8-764-55849-0014893-003-1-001-000-000-000

6030 HUNTERS CREEK RD
IMLAY CITY MI 48444-9716

PAGE 1 OF 1

ACCOUNT NUMBER:

*SEE REVERSE SIDE FOR ADDITIONAL INFORMATION*

☐ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address and telephone number | *Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 **2010** Form **1098** | **Mortgage Interest Statement** |
|---|---|---|---|
| American Home Mortgage Servicing Inc.<br>P.O. Box 631730<br>Irving, TX 75063-1730<br>1-877-304-3100 | | | |
| PAYER'S/BORROWER'S name, street address (including apt. no.), city, state and ZIP code | 1 Mortgage interest received from payer(s)/borrower(s)*<br>$ 28,204.94 | | **Copy B**<br>**For Payer/Borrower** |
| | 2 Points paid on purchase of principal residence<br>$ 0.00 | | The information in boxes 1, 2, 3, and 4 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| 6030 HUNTERS CREEK RD<br>IMLAY CITY MI 48444-9716 | 3 Refund of overpaid interest<br>$ 0.00 | | |
| | 4 Mortgage insurance premiums<br>$ 0.00 | | |
| | 5 Real estate taxes paid<br>$ 0.00 | | |
| | RECIPIENT'S federal identification no. | PAYER'S social security number | |
| | Account number (see instructions) | | |

Form **1098** (Keep for your records) Department of the Treasury - Internal Revenue Service

---

6030 HUNTERS CREEK RD
IMLAY CITY MI 48444-9716

AMERICAN HOME MORTGAGE SERVICING INC.
P.O. BOX 631730
IRVING, TX 75063-1730
1-877-304-3100

YEAR : 2010
ACCT #:
SSN :

| DISBURSEMENTS FROM ESCROW | | PRINCIPAL | | ESCROW RECONCILIATION | |
|---|---|---|---|---|---|
| HAZARD INS PAID | 2,511.60 | PRINCIPAL PAID | $1,221.88 | BEGINNING BALANCE | -6,586.60 |
| | | BEGINNING BALANCE | 287,495.51 | DISBURSEMENTS | 2,511.60 |
| | | ENDING BALANCE | 286,273.63 | ENDING BALANCE | -9,098.20 |
| | | **INTEREST** | | | |
| | | INTEREST PAID | 28,204.94 | | |
| CURRENT TOTAL PAYMENT | 2,879.55 | | | | |

*If the Tax ID number shown above is incorrect or if the space is blank, please complete the attached form and return to us at the address indicated.*